SOUTH DAKOTA WHEAT GROWERS' ASSOCIATION, Appellant, v. BRADY, Respondent.

(212 N. W. 922.)

(File No. 6239.    Opinion filed April 1st, 1927.)

1.  **Warehousemen—Conversion—Elevator Owner, Offering to Deliver Amount and Quality by Grade Designated in Storage Receipts for Wheat, Held Not Liable For Conversion (Rev. Code 1919, §§ 9753, 9754).**

    Elevator issuing receipts for wheat designated as No. 1 durum, with agreement to deliver like amount and quality by grade, held not guilty of conversion for refusal to deliver wheat commanding top price for milling purposes claimed to be quality of wheat delivered elevator, where elevator stood ready to deliver wheat of kind, amount, and grade described in storage tickets, in view of Rev. Code 1919, §§ 9753, 9754, in force at time of issuance of tickets, authorizing delivery of equal amount of same kind or grade instead of identical grain.

2.  **Warehousemen—Refusal of Offer to Deliver Wheat Complying With Terms of Storage Tickets Held Waiver of Delivery.**    .

Where elevator offered to deliver wheat of like grades and amount with that received in compliance with contract, as represented by storage tickets, refusal of offer constituted waiver of delivery, excusing elevator from any liability for conversion.

3. **Warehousemen—Contract With Owners Of Storage Tickets Is Determined by Tickets In Connection With Statutes In Force At Time.**

Elevator's contract with holders of storage tickets with regard to delivery of grain is found in storage tickets taken in connection with statutes in force at date of tickets.

4. **Warehousemen—Persons Depositing Wheat In Elevator Before Amendment Of Statute Held Bound to Accept Delivery of Kind and Grade Described in Storage Tickets (Rev. Code 1919, §§ 9753, 9754; Laws 1925, c. 299).**

Under Rev. Code 1919, §§ 9753, 9754, persons delivering wheat to elevator, and accepting storage tickets before enactment of Laws 1925, c. 299, lost control of identical grain, and agreed to accept delivery of kind and grade specified in receipts.

5. **Warehousemen—Law Requiring Elevators to Deliver Grain of Kind Deposited Held Not To Apply to Pre-Existing Contracts (Laws 1925, c. 299, Amending Rev. Code 1919, § 9754).**

Laws of 1925, c. 299, amending Rev. Code 1919, § 9754, to require delivery by elevators of same grade and quality of grain as that deposited, held not to apply to contracts entered into prior to taking effect of amendment.

---

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Warehousemen, Key-No. 25(1), 40 Cyc. 440; **(2)** Warehousemen, Key-No. 25(8) 40 Cyc. 442 (Anno); **(3)** Warehousemen, Key-No. 10, 40 Cyc. 411; **(4)** and **(5)** Warehousemen, Key-No. 25(2), 40 Cyc. 440.

Appeal from Circuit Court, Brown County; Hon. Robert D. Gardner, Judge.

Action by the South Dakota Wheat Growers' Association against J. G. Brady, sole trader, doing business under the firm name and style of J. G. Brady Independent Elevator Company. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Affirmed.

*Van Slyke & Agor,* of Aberdeen, for Appellant.

*Frank L. Sieh,* of Aberdeen, and *W. H. Stutsman,* of Mandan, for Respondent.

MORIARTY, C. The appellant, South Dakota Wheat Growers' Association, is a corporation organized under the laws of this

state providing for the incorporation of co-operative marketing associations.

The respondent J. G. Brady is a sole trader, doing business under the name of J. G. Brady Independent Elevator Company. During the fall of 1924 he operated an elevator at Fife, in this state. During the latter part of August, 1924, and the months of September and October of that year, wheat growers residing in the vicinity of Fife delivered to said elevator certain quantities of durum wheat, receiving therefor storage receipts, all of which receipts were in the form of the following exhibit:

"J. G. Brady Independent Elevator.

"No. 13.                             Fife, S. D., Aug. 20, 1924.

"Received in store of J. C. Grote, 894 bu. 50 lbs. No. 1 durum, which amount and same quality by grade will be delivered to the owner of this receipt, or his order, as provided by law and the rules of the board of railroad commissioners of South Dakota, upon surrender hereof and payment of lawful charges.

"(1)    Including all charges for receiving, handling, insuring and delivering of wheat or flax, three and one-half cents per bushel, and of corn, oats, barley, or other coarse grain, three cents per bushel.

"(2)    Storage from date of receipt, one-thirtieth of one cent per bushel for each day thereafter.

"(3)    Unless otherwise agreed in writing the storage period on shelled corn shall terminate on April 30th following the issuance of the receipt.

"(4)    Where grain is delivered to the holder of receipts, such grain shall be delivered subject to weights and grades at terminal.

"(5)    If delivery is demanded, it will be made at this elevator if possible. If conditions arise that prevent such delivery, we reserve the right to make delivery at a terminal market where we ship grain, said terminal market to be designated by the holder hereof, upon payment of proper storage charges and the regular freight charges between this station and the terminal market selected upon the gross amount called for by this receipt.

"(6)    If grain is cleaned at owner's request, one-half cent extra per bushel.

"(7) This grain is insured for the benefit of the owner.

|       |     |                 |
|-------|-----|-----------------|
| 932 bu. | 10 lbs., gross. |
| 37 bu. | 20 lbs., dockage. |
| 894 bu. | 50 lbs., net. |

"J. G. Brady Independent Elevator,
By J. G. Brady, Agent."

During the months above mentioned storage receipts, or tickets in the above form, and representing 2,287 bushels and 10 pounds, net, of No. 1 durum wheat, and 3,848 bushels and 30 pounds, net, of No. 1 amber durum wheat, were assigned by the holders to the appellant association. These tickets were so assigned almost immediately after their issuance, and, within a few days after taking assignments of sufficient tickets to represent several hundred bushels of wheat, the association mailed to Brady what is referred to as loading orders. Of these loading orders the following is a representative sample:

"South Dakota Wheat Growers' Association.
"General Offices.

"No. 823.

"Aberdeen, South Dakota.
"Loading Order.

"August 28, 1924.

"To J. G. Brady Independent Elevator Co. at Fife:
"Shipping instructions:
"Order of S. Dak. Wheat Growers' Ass'n at Minneapolis.
"Notify American Wheat Growers Associated, Inc., Minneapolis, Minn.
"Following elevator receipts are at Aberdeen Natl. Bank.
"Turn bill of lading to Aberdeen Natl. Bank.
"Warehouse charges, draft on us for same.

| Date of Receipt | Receipt Number | Issued to | Grade | Gross Bushels | Dockage | Net Bushels |
|-----------------|----------------|-----------|-------|---------------|---------|-------------|
| 8-27 | 18 | J. W. Hoopes | 1AD | 942 | 47 | 895 |
| 8-27 | 19 | W. J. Walker | 1AD | 942 | 47 | 895 |
|  |  |  |  | 1884 | 94 | 1790 |

"Be sure to use an order B/L when shipping.

. "Draft against us for storage and a 3½c handling charge. Kindly load for our account wheat receipts as listed above. Forward loading weight certificate to this office. Bill of lading as above directed. If tickets surrendered represent more wheat than you load, please issue ticket in our favor for balance.

"South Dakota Wheat Growers' Association,
"By P. Armantrout (S. R. 177)."

After several of the shipping orders had been sent to Brady, and no deliveries made in response thereto, Brady and representatives of the association met several times in attempts to arrive at a settlement. No agreement was arrived at as a result of the first two or three meetings so held. Brady contended that he was liable only for the delivery at Minneapolis of wheat, or tickets representing wheat of the required amount of No. 1 durum or No. 1 amber durum wheat, or to pay the market price of that amount and grade of wheat on the day of settlement. The representatives of the association contended that they were entitled to receive wheat of a quality which would command practically the top price for durum wheat sold by sample for milling purposes, and which they claimed would sell for a considerable premium over the regular market quotations.

Finally, no agreement having been reached, and no deliveries having been made, further demands for delivery were made later, but, under the view which we take of the legal rights of the parties, it is not necessary to determine whether the association made its demand and tender in a manner sufficient to support a recovery for conversion.

It appears that Brady at all times stated that he was ready to deliver wheat of the kind, amount, and grade described in the storage tickets, and the representatives of the association persisted in their contention that they were entitled to receive wheat of the same milling quality as that delivered to Brady.

Finally, on April 3, 1925, Brady delivered to the association storage tickets upon an elevator in Duluth representing wheat of the amounts, kinds, and grade stated in the tickets held by the association. These Duluth elevator tickets were accepted by the association, and it paid the storage and other charges accruing from the date of the deliveries at Fife to April 3, 1925. On the

15th day of April, 1925, the association sold the Duluth tickets at that day's market price for the kinds and grade of grain represented thereby, allowing storage from April 3d to April 15th to be deducted from the proceeds of the sale.

About May 1, 1925, the association began this action for the conversion of the wheat represented by the storage tickets issued by Brady at his Fife elevator. The claim of conversion is based upon the theory that a demand for the delivery of the wheat was made on January 30, 1925; that delivery was refused; and that such demand and refusal constituted a conversion entitling the association to recover the highest price which the wheat would bring between the date of demand and the date of suit. As to the acceptance of the Duluth tickets and of the proceeds of their sale the association contended that such tickets and their proceeds were accepted as a partial payment only of the amount due for the converted grain.

The case was tried to a jury, and resulted in the direction of a verdict for the defendant. From a judgment entered upon such verdict, and from an order denying a new trial, this appeal is taken.

[1] While several questions are presented and argued in the briefs, we find no necessity of considering any question, except that of what Brady was required to do to relieve him from liability under the storage tickets issued by him. On every demand made upon him he offered to deliver, at the terminal, wheat of the kinds and grade represented by these tickets. The association demanded something more than that, contending that it was entitled to durum wheat of a superior milling quality, and which would sell at a premium of some 40 cents above the market price of wheat sold by grade.

[2] If Brady's offer of delivery was sufficient to comply with his contract, the refusal of the offer waived delivery, and there was no conversion.

[3] Brady's contract with the holders of the storage tickets is found in the tickets themselves, taken in connection with the statutes which were in force at the date of the tickets. The tickets provide that Brady will deliver to the holder wheat of the same amount "and same quality by grade"; and they further provide that, if conditions arise to prevent delivery at the elevator where

the grain is received, the warehouseman reserves the right to make delivery at the terminal market, upon payment of storage charges and freight charges.

Section 9754, R. C., as in force at all times involved in this action, provided that, on a return of the warehouse receipt, properly indorsed, and the tender of all proper charges, such grain, or an equal quantity of the same grade and kind, shall be delivered to the holder, and it contained this further provision:

"Nothing in this section shall be construed to mean the delivery of the identical grain specified in the receipt so presented, but an equal amount of the same grade and kind. * * * And when such grain is to be shipped from some terminal point where such elevator company or warehouseman is doing business, such elevator company or warehouseman shall guarantee both weight and grade."

And section 9753, R. C., as then in force, authorized the issuance of storage tickets in the form of those actually involved herein.

The record shows that, when the grain represented by these tickets was shipped to Minneapolis, it failed to make a No. 1 grade. Brady told the representatives of the association that he could not deliver at Fife any durum wheat that would grade No. 1 at Minneapolis, as no such wheat was being received at Fife, and that he would be obliged to deliver wheat of that grade at Minneapolis. He had issued tickets representing No. 1 wheat, and under his contract and the statute he was obligated to deliver wheat that would grade No. 1. This he offered to do, and the association refused the offer. On March 30, 1925, however, the association stated in its written demand that it would accept wheat of the same amount, kind, and grade as that represented by its tickets. Three days afterward it accepted storage tickets on the Duluth elevator representing wheat described as No. 1 durum and No. 1 amber durum, in the amounts required by its tickets.

[4] The only reasonable construction of the words "kind and grade," as used in the storage tickets and in the statute, is that kind of grain in the tickets involved herein in represented by "durum" and "amber durum," and grade is represented by "No. 1." When Brady issued these tickets he obligated himself to deliver No. 1 durum wheat and No. 1 amber durum wheat. And, when

the parties delivering the wheat accepted the tickets, they lost control of the identical grain, and agreed to accept delivery of No. 1 durum and No. 1 amber durum of the specified amount.

The record fails to show any failure or refusal on Brady's part to comply with the obligations of his contract.

[5]  Chapter 229 of the Laws of 1925 amended section 9754, R. C., so as to require the delivery of grain of the same grade, kind, and quality as that deposited.   But, as the storage tickets involved in this action were issued in 1924, the contract was entered into under the statute then in force, and we are not called upon to determine what effect, if any, the addition of the word "quality" to the requirements of delivery may have upon contracts entered into after such amendment went into effect.

The trial court did not err in directing a verdict for the defendant.

The judgment and order appealed from are affirmed.

GATES, POLLEY, SHERWOOD, and BURCH, JJ., concur.
CAMPBELL, P. J., not sitting.