36 Wn.2d 680 (1950)
219 P.2d 986
ALLEN V. SMITH, INC., Respondent,
v.
ROSALIA PRODUCERS, INC., Appellant.[1]
No. 31271.
The Supreme Court of Washington, Department One.
June 29, 1950.
Ennis & Herman, for appellant.
G. Kent Burson, F.L. Stotler, and Philip H. Faris, for respondent.
GRADY, J.
This action was instituted by the holder of warehouse receipts against a public grain warehouseman to recover damages representing the difference in value between *681 peas delivered by the grower to the warehouse and those delivered by the warehouseman to the holder of such warehouse receipts. The trial of the case resulted in a judgment for the plaintiff. The defendant has appealed. The parties will be referred to as respondent and appellant respectively.
During the season of 1946, peas were grown by Pittman Brothers, and, as harvested and threshed, were delivered to appellant's warehouse. As the peas were delivered, a standard form of negotiable warehouse receipt was issued, and at the same time samples were taken. When delivery was completed, samples were sent to a branch of the United States department of agriculture at Spokane for inspection. The department issued inspection certificates setting forth in terms of percentage that which it regarded as "dockage and defects" in the peas. Other peas were delivered by various growers to the same warehouse. They were all commingled in a common mass. It is admitted by all parties, and found by the court, that the peas were fungible goods. On or about July 12, 1947, the appellant honored the warehouse receipts, which had been issued to Pittman Brothers and assigned to respondent, by loading from its warehouse into freight cars the same quantity of peas in weight as were represented by the warehouse receipts. At the time those peas were taken from the warehouse, they were inspected by the United States department of agriculture. The inspection certificates issued indicated that they were substantially inferior to those delivered into the warehouse by Pittman Brothers in that they then had a higher percentage of dockage and defects.
The peas we are considering were dry thresher-run Alaska peas. The warehouse receipts issued contain the following provision:
"IF STORED in commingled pile or bin, warehouseman holds the right to commingle this commodity with other commodities of the same sub-class and shall not be required to deliver the identical grain specified in this receipt, but shall deliver an equal amount of grain of the same variety, grade and sub-class to the holder of this receipt."
*682 No issue is presented as to variety or subclass. There are no grade designations for thresher-run peas. The inspection certificates issued by the United States department of agriculture for peas going into a warehouse indicate in percentages "dockage," which includes dirt, weed seeds, chaff, cereal grains, etc.; also "inseparable foreign matter" not included within the term "dockage"; small peas; peas which are shriveled or bleached; peas having cracked seed coats; and weevil damage. Peas which have been recleaned or processed, or both, have grade classifications of U.S. No. 1, U.S. No. 2, U.S. No. 3, and U.S. Sample Grade, the latter being peas which do not meet the requirements of any of the numbered grades. The peas were never recleaned or processed prior to delivery to respondent.
The weevil is an insect which feeds on peas. While the peas are growing in the field the adult weevils lay their eggs. The larvae eat through the pods into the peas. By harvest time, the weevils in the peas may be dead or alive and in various stages of development. The total weevil percentage is shown on the certificate, and that which is known as "pinhole weevil" has separate percentage designation. Such defects as "pinhole weevil" and "cracked seed coats" increase to some extent during storage.
The respondent contends, in support of its judgment, that it was entitled to receive from the appellant peas of the same quality as were delivered by the grower to its warehouse. The appellant contends that, when such fungible goods as peas are deposited in a common mass in a warehouse, the peas of each owner or depositor lose their identity; the respective owners lose title to their peas, and in lieu thereof become respective owners of an undivided part of the common mass, and that the warehouseman performs his full duty when he delivers to each depositor his aliquot part of such common mass.
[1] The position of respondent finds support in a general rule (statutory in some states) to the effect that a warehouseman, pursuant to a general custom, is allowed to store fungible goods in bulk where no instructions forbidding such practice are received from the depositor, and he may *683 discharge his obligation to the owner by delivering to him goods of like amount, kind, grade and quality upon demand therefor being made. Union Elevator & Warehouse Co. v. Farmers' Warehouse Co., 69 Wash. 664, 125 Pac. 960; Moses v. Teetors, 64 Kan. 149, 67 Pac. 526, 57 L.R.A. 267; Baker v. Born, 17 Ind. App. 422, 46 N.E. 930; Northern Trust Co. v. Consolidated Elevator Co., 142 Minn. 132, 171 N.W. 265, 4 A.L.R. 510; South Dakota Wheat Growers' Ass'n v. Brady, 51 S.D. 180, 212 N.W. 922; 56 Am. Jur. 415, Warehouses, § 206; 67 C.J. 523, Warehousemen and Safe Depositaries, § 140; Rem. Rev. Stat., § 7001 [P.P.C. § 598-61].
[2] The cases, statements of text writers and statutes make reference to kind, quality and grade of goods when defining the duty of a warehouseman to make delivery to the holder of a warehouse receipt. No difficulty is found in applying a rule requiring a warehouseman to deliver goods of the same kind, quality and grade as received where the identity of the goods deposited is preserved, and such rule can be applied to fungible goods stored in a common mass if all of the goods deposited are of the same kind, quality and grade.
Difficulty in applying these principles of law comes when a situation like the one before us is presented. The peas deposited by the various owners, by common consent and custom, were deposited in a warehouse not capable of keeping the peas of each grower separate. The peas were thresher-run. They had not been sorted, nor their imperfections removed so that each pea was on a parity with the other. One exhibit of incoming weights and inspection certificate data indicates the presence of weevil and other defects in all of the peas delivered to the warehouse. All of this was well known to the growers, the warehousemen, the processors and all others who handled or dealt in thresher-run peas. The transactions in connection with the peas in question were voluntary, and all parties had full knowledge of the circumstances and conditions affecting the peas. When the peas were stored in a common mass it was known that the appellant could not, and it was not contemplated that it would, deliver to the growers or the assignee *684 of their warehouse receipts the same peas they had deposited; but on the contrary, in all probability the peas delivered would have been grown on other ranches, and at best only a small part of the peas grown by Pittman Brothers might be included. The appellant gave no assurance to any one as to the quality of the peas it would deliver upon the surrender of any particular warehouse receipt. Its covenant was to deliver "an equal amount of grain of the same variety, grade and sub-class" to the holder of the receipt.
When respondent acquired the warehouse receipts it was charged with knowledge that the peas in the warehouse were fungible goods and had been commingled in a common mass; that the peas delivered were not all of the same quality; that there would be deterioration of some of them while in storage due to causes over which the warehouseman had no control, and that upon surrender of the warehouse receipts it might not get the same quality of peas as represented by the incoming inspection certificates. In such a situation as this, it is not possible to apply the same rules to the appellant as would be the case if the fungible goods, when deposited in a common mass, were precisely of the same kind and quality and were not of a character which may deteriorate while in storage because of some inherent or latent condition. The authorities cited by appellant, and others which we have examined, considered fungible goods (such as wheat) stored in a common mass with other goods, all of which were substantially of the same kind, quality and grade, and which remained the same during storage. Those authorities cannot be controlling in a situation such as we are now considering.
[3] The warehouse receipts held by respondent make no specific reference to "quality," but refer to "grade." The word "grade" has many different meanings, but even though we shall assume the parties understood and intended that it was used as meaning "quality," we now decide that when the original holders of the warehouse receipts stored their dry thresher-run Alaska peas in appellant's warehouse and consented to their storage in a common mass with other peas grown by others, the appellant performed its full *685 legal duty when it later delivered an aliquot part of the common mass of peas from the warehouse upon surrender of the warehouse receipts.
The judgment is reversed, and the case remanded for the entry of an order of dismissal.
SIMPSON, C.J., BEALS, SCHWELLENBACH, and DONWORTH, JJ., concur.
August 2, 1950. Petition for rehearing denied.
NOTES
[1] Reported in 219 P. (2d) 986.